StUNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SANDRA MALONE, )<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>Commissioner of Social Security, )<br>Defendant. ) | Civil Action No. 3:10-cv-01137<br>Judge Nixon/Brown |

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB), as provided under Title II and Title XVI of the Social Security Act (the "Act"), as amended. Currently pending before the Magistrate Judge is Plaintiff's Motion for Judgment on the Record and Defendant's Response. (Docket Entries 16, 17). Plaintiff has also filed a Reply. (Docket Entry 18). The Magistrate Judge has also reviewed the administrative record (hereinafter "Tr."). (Docket Entry 10). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** the Plaintiff's Motion be **GRANTED in part** and the action be remanded for rehearing pursuant to 42 U.S.C. § 405(g)**.**

## I. INTRODUCTION

Plaintiff filed an application for DIB and SSI on February 9, 2006, with an alleged onset date of November 11, 2005. (Tr. 20). Plaintiff's application was denied initially and on reconsideration. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff ultimately had four hearings before ALJ H. Scott Williams. (Tr. 694-800). Plaintiff's

1

first hearing, on March 1, 2008, was continued because she lacked counsel. (Tr. 694-703). Her second hearing, on July 1, 2008, was continued to obtain additional medical evidence. (Tr. 704-35). At her third hearing, on November 12, 2008, Vocational Examiner ("VE") Dr. Kenneth Anchor testified. (Tr. 736-66). At her fourth hearing, on March 2, 2009, VE Michelle McBroom-Weiss testified to provide additional information about the number of jobs Plaintiff could perform. (Tr. 767-800).

In his decision denying Plaintiff's claims, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has congestive heart failure, hypertension, cervical degenerative arthritis, obesity, and adjustment disorder, which are found to be a "severe" combination of impairments, but not severe enough, either singly or in combination to meet or medically equal the requirements set forth in the Listing of Impairments. Appendix I to Subpart P, Regulations No. 4.

3. After consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to perform a limited range of light work; lift and carry 10 to 20 pounds; stand and walk four hours in an eight-hour workday (less than one hour uninterrupted); sit eight hours in an eight-hour workday; with limited ability to squat and reach overhead; and should avoid heat, humidity, climbing and heights. Additionally, the claimant is moderately limited in performing activities within a schedule, maintaining punctuality and attendance, and in completing a normal work week; as well as, with interacting appropriately with co-workers and the general public; and in setting realistic goals.

4. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

5. The claimant is 45 years old, described as a younger individual (20 CFR 404.1563 and 416.963).

6. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

7. Transferability of job skills is not an issue in this decision (20 CFR 404.1568 and

        416.968).

8. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

9. The claimant has not been under a disability, as defined in the Social Security Act, from November 11, 2005, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-32).

The Appeals Council denied Plaintiff's request for review on October 1, 2010. (Tr. 5-9). This action was timely filed on December 2, 2010. (Docket Entry 1).

## II. REVIEW OF THE RECORD

Plaintiff has adopted the ALJ's findings of facts at steps 1-4. Plaintiff has adopted the ALJ's residual functional capacity ("RFC") assessment, meaning a review of the medical record is not necessary in this case. The Magistrate Judge therefore refers to the ALJ's decision at Tr. 17-32 for a full discussion of Plaintiff's alleged disabling conditions. Because Plaintiff's alleged error focuses on the testimony of Dr. Anchor and Ms. McBroom-Weiss, it is necessary to examine portions of the hearings held on November 12, 2008 and March 2, 2009.

At Plaintiff's hearing on November 12, 2008, Dr. Anchor provided VE testimony. (Tr. 749-66). Dr. Anchor testified that, given the ALJ's RFC assessment, Plaintiff could perform some light work, with examples of small parts assembler, table worker, and light cashier. (Tr. 749-51). At the sedentary level, Plaintiff could perform jobs such as machine feeder or food and beverage order clerk. (Tr. 752).

On cross examination, Plaintiff's attorney examined Dr. Anchor's notes and pointed out that the notes did not contain the numbers of jobs available for any of the jobs he had identified

3

in his testimony. (Tr. 757). Dr. Anchor responded that he had testified from memory and did not need notes. *Id*. When Plaintiff's attorney asked whether the single representative Dictionary of Occupational Titles ("DOT") number he used for machine feeder encompassed 18,000 jobs, Dr. Anchor responded that "there is more than one DOT number for many of these frequently occurring jobs," and there would be additional DOT numbers included in the 18,000 figure. (Tr. 760-61). In other words, there is more than one DOT number included under the heading "machine feeder." *Id*. In some instances, the different DOT numbers appear at different exertional levels. (Tr. 763). Plaintiff's attorney and the ALJ asked Dr. Anchor to provide the number of jobs under a single DOT number in a post-hearing submission. *Id*. Dr. Anchor made a handwritten submission dated November 19, 2008, which stated that he is "unaware of any such database" containing the information requested. (Tr. 174).

At Plaintiff's fourth hearing, Ms. McBroom-Weiss testified that, under the ALJ's RFC assessment, Plaintiff could perform the jobs of towel folder[1] (59 positions in Tennessee, 3,600 in the United States), light cashier (19,000 in Tennessee, 900,000 in the United States), electrical assembler (100 in Tennessee, 6,100 in the United States), and security systems monitor (80 in Tennessee, 1,200 in the United States). (Tr. 774-93). She testified that she obtained these numbers using the Occupational Employment Statistics ("OES") in combination with a computer program called SkillTRAN, which has a methodology for reducing the OES numbers "based on [the] frequency of the DOT codes underneath the OES numbers by how they're typically in the [] population." (Tr. 774). SkillTRAN uses census numbers to reduce the OES numbers for specific positions. *Id*. She demonstrated this program using light cashier as an example. (Tr. 774-75). She

---

[1] In the hearing transcript, this job is incorrectly referred to as "towel holder." (Tr. 773).

noted that SkillTRAN does not give an option for sit/stand, but she used her own experience to reduce the number of towel folders to only sedentary options. (Tr. 785-86).

Plaintiff's counsel questioned Ms. McBroom-Weiss regarding Plaintiff's mental limitations in her RFC. (Tr. 777). He questioned whether a person with moderate limitation in interacting with the general public would be able to perform the light cashier position, which indicates constant interaction with the public. (Tr. 788-89). Ms. McBroom-Weiss noted that she considered moderate to be "more than not significant but not serious." (Tr. 790). She considered it to mean that, if Plaintiff was dealing with the public on a one- to two-step instruction, she would be able to do so. *Id*. After examining the consulting psychologist's report, the ALJ noted that he indicated she would be able to "complete simple and detailed tasks and sustain persistence on routine activities requiring limited contacts with the public." (Tr. 792). After additional discussion, the ALJ stated, "Let's just eliminate the light cashier." *Id*.

Toward the end of the hearing, Plaintiff's counsel pointed out that, with the position of light cashier eliminated, the VE had identified examples with a total of 239 jobs in Tennessee and 16,900 in the United States. (Tr. 797). She agreed that 239 was "just a minimal fraction of the total sedentary and light occupational base in Tennessee" and that the number "just reflects what [she could] come up with given all of the [] limitations that this hypothetical claimant has." *Id*. After further questioning, Ms. McBroom-Weiss noted that there were approximately 11,000,000 light jobs in the U.S. in the first quarter of 2008. (Tr. 798-99).

### III. PLAINTIFF'S STATEMENT OF ERROR AND CONCLUSIONS OF LAW

In her Motion, Plaintiff alleges only one error, that the ALJ improperly found that Plaintiff can perform other jobs existing in significant numbers. Plaintiff argues that Dr. Anchor's

testimony is not reliable because he could not determine the number of jobs that exist for any discrete DOT job title. She further argues that Ms. McBroom-Weiss's testimony was also unreliable and, moreover, identified both obsolete job titles and an insignificant number of jobs Plaintiff can perform.

A.      Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exits in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner*, 105 F.3d 244, 245 (6th Cir. 1996). Even if the evidence could also support a difference conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). However, if the record was not considered as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985).

B.      Proceedings at the Administrative Level

The Claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

1. If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

2. If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

3. If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent; if a listing is met or equaled, benefits are owing without further inquiry.

4. If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (*e.g.*, what the claimant can still do despite his or her limitations); by showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

5. Once the claimant establishes a *prima facie* case of disability, it becomes the Commissioner's burden to establish the claimant's ability to work by providing the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *See Wright v. Massanari*, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, Appendix 1.

7

to direct a conclusion, but only as a guide to the disability determination. *Id.*; *see also Moon*, 923 F.2d at 1181. In such cases where the grids do not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through VE testimony. *See Wright*, 321 F.3d at *616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); *see also Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

C.  <u>The ALJ Erred in Finding that a Significant Number of Jobs Exist that Plaintiff Could Perform</u>

As an initial matter, while ultimately irrelevant, the Magistrate Judge is not convinced by Plaintiff's argument that the testimony from the two VEs was unreliable. The ALJ ascertained that Dr. Anchor's testimony was consistent with the DOT, as required by SSR 00-4p. (Tr. 752). While the undersigned recognizes that the SSA is in the process of replacing the DOT, considered obsolete by some agencies, with a new system, the DOT is currently the standard required by the Commissioner. *See* 73 Fed. Reg. 78864-01, 2008 WL 5329223 (Dec. 9, 2008). In his cross-examination of Dr. Anchor, Plaintiff's counsel identified some of the problems inherent in the DOT system, including the inability to narrowly tailor the available number of jobs in existence for one specific job title. In light of the ALJ's apparent rejection of Dr. Anchor's testimony by not including it in his opinion, however, the Magistrate Judge does not believe Plaintiff has stated an error in this case.

Ms. McBroom-Weiss's testimony was intended to accurately tailor the number of jobs available to Plaintiff. She used SkillTRAN, a relatively new program, to find the numbers of jobs

8

available for specific DOT numbers. She testified in detail regarding SkillTRAN's methodology, which is based on census numbers, DOT codes, and numbers from the OES, which are all government sources and constitute "reliable job information available from various governmental and other publications." *See* 20 CFR §§ 404.1566(d) and 416.966(e). The Magistrate Judge therefore sees no reason to discredit her testimony.

While Plaintiff has raised a number of interesting arguments as to the relevance of certain job titles, including security systems monitor, Ms. McBroom-Weiss identified as possible jobs for Plaintiff, the Magistrate Judge does not believe it is necessary to visit this topic. The ALJ committed reversible error by failing to find jobs that exist in significant numbers in the national economy that Plaintiff can perform. Even taking into account the 80 security systems monitor jobs identified in Tennessee, Ms. McBroom-Weiss identified only 239 jobs in Tennessee and 16,900 jobs in the United States Plaintiff could perform with the ALJ's determined RFC.

Under the Social Security Act, once Plaintiff has demonstrated the inability to return to her past relevant work, the Commissioner must demonstrate the availability of other work existing in significant numbers in the national economy. "The Social Security Act, as amended, provides that 'work which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.'" *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (quoting 42 U.S.C. § 423(d)(2)(A)). Such work does not include "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [plaintiff] live[s]...." *Id.* (quoting 20 C.F.R. § 404.1566(b)). Whether a particular number of jobs is "significant" is not an issue determinable by raw numbers, but is dependent upon the context of, *e.g.*, the Plaintiff's level of impairment, the reliability of her

9

testimony, and the reliability of the vocational expert's testimony. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). In *Lenon v. Apfel*, 191 F.Supp.2d 968, 979 (W.D. Tenn. 2001), cited by Plaintiff, the Court found that 65 jobs within 75 miles of Plaintiff's home was not a significant number.

In this case, the Magistrate Judge agrees with Plaintiff that 239 jobs in Tennessee and 16,900 jobs in the United States does not meet the standard for "significant." Plaintiff is an unskilled worker with additional limitations that narrow the national number of unskilled light jobs from approximately 11,000,000 to 16,900. (Tr. 798-99). The undersigned believes this case is distinguishable from *Harmon v. Apfel*, 168 F.3d 289 (6th Cir. 1999), where the court found that 700 jobs in the local economy constituted a significant number. In that case, 700,000 jobs were available nationally; while the jobs may have been scarce locally, they were clearly significant in the national economy.[3] Here, Plaintiff has a mere 16,900 jobs available in the entire country. On average, each state would have 338 jobs available for Plaintiff. This is not a circumstance where Plaintiff chose to live in an isolated area away from jobs, as in *Harmon*; it is not clear that Plaintiff could live *anywhere* and have a significant number of jobs available to her. Therefore, the Magistrate Judge believes this case must be remanded for further proceedings consistent with this Report and Recommendation.

## IV. RECOMMENDATION

In light of the foregoing, the Magistrate Judge **RECOMMENDS** that Plaintiff's Motion be

---

[3] Similarly, the court cited favorably an unpublished opinion finding 125 jobs in the local economy and 400,000 jobs in the national economy constituted a significant number.

**GRANTED in part** and the action be remanded for rehearing pursuant to 42 U.S.C. § 405(g).

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objection to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

ENTERED this 23rd day of November, 2011.

/S/ Joe B. Brown
_____
JOE B. BROWN
United States Magistrate Judge